## Proctor v. Louisville & Nashville Railroad Company.

(Decided June 24, 1921.)

### Appeal from Warren Circuit Court.

1. Appeal and Error—Filing Transcript.—Where a party files in the clerk's office of this court a copy of the judgment of the lower court within two years from its entry therein, and an appeal is granted him by the clerk of this court, and a summons issued from this court, and he thereafter files in the clerk's office a transscript of the record more than twenty days before the first day

of the second term of this court after the granting of the appeal, the appeal will not be dismissed.

2. Appeal and Error—Dismissal—Quashal of Summons.—On motion to dismiss an appeal or quash a summons issued from this court, upon grounds not appearing in the record, there being no affidavit filed, but only a recital in the written motion of counsel of alleged facts not disclosed by the record, the motion will be overruled.

3. Attorney and Client—When Contract of Employment Void.—A contract of employment by the widow of a decedent of a lawyer to institute and prosecute an action for his death, which restricted the right of the widow to qualify as administratrix, and gives to the attorney the unrestricted control of the claim, and of all funds of the estate until the same should be paid out by order of court, and denies to the widow the right to compromise without the consent of the attorney, and provides that if she does so compromise, he is to have a certain fixed fee of a large amount, is void as against public policy.

4. Contracts—Void Contracts.—Where unenforceable provisions of a contract are so inextricably involved with that portion which is enforceable, and to expurgate from it the objectionable features would so far change the tenor and effect of the whole contract as that the court cannot assume that the parties would have entered into the same at all if the invalid parts were eliminated, the whole contract will be declared invalid.

5. Equity—Issue Out of Chancery.—After the final submission of an equitable action, and after the argument of counsel, it is too late to ask for a continuance and have a hearing before a jury of an issue out of chancery, and particularly where the party asking same had agreed for the chancellor to enter judgment on the whole case.

6. Attorney and Client—Quantum Meruit.—A plaintiff in an action on a contract for a fee, who alleges the value of the services rendered, and in his prayer asks for all proper relief, was entitled to a judgment on quantum meruit for the value of his services where the contract sued on was adjudged invalid.

J. H. HAZELRIGG, B. F. PROCTOR and HERDMAN & ROPER for appellant.

BENJ. D. WARFIELD and SIMS, RODES & SIMS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming on original and cross appeals.

In November, 1911, Claude Strange, an employe of the L. & N. Railroad, was killed in an accident, and shortly thereafter his widow employed appellant, a practicing lawyer, to bring and prosecute an action for damages against the railroad company.

The widow subsequently qualified as administratrix, and thereafter appellant did institute such suit in the

Logan circuit court, and on the trial in that court plaintiff was awarded a verdict for $15,000.00 damages, upon which judgment was entered. But the railroad company prosecuted an appeal to this court from that judgment, and the same was, in December, 1913, reversed by this court and sent back for another trial. L. & N. Railroad Co. v. Strange's Admx., 156 Ky. 439.

After the reversal of that judgment, and in July, 1914, the railroad company, without the knowledge or consent of appellant, compromised with the administratrix for the sum of $5,000.00 and the payment of the court costs, and, in addition, agreed with her at the time that it would pay to appellant as her attorney, such sum, if any, as he might be entitled to in law.

This is an ordinary action by appellant against the railroad company and Mrs. Strange, wherein he prays that "the settlement of July 25, 1914, be declared void, and that plaintiff and defendant, Strange, be permitted to prosecute the claim for the death of her husband, or that plaintiff be given judgment for one-half the judgment, interest and damages the same as if the judgment had been affirmed in the Court of Appeals, to-wit: ten thousand dollars with six per cent interest from the date of reversal, to-wit, December 13, 1913, and for all proper relief."

In his petition plaintiff sets out in terms not only the original contract entered into between him and Mrs. Strange, dated December 26, 1911, but also sets out three amendatory or supplemental contracts thereafter entered into between them referring to the same subject matter, two of the latter being entered into after the judgment in the circuit court and while the cause was pending on appeal in this court, and the last having been entered into, as alleged, on the 6th day of January, 1914, but which bears date the 11th of March, 1914, and after the reversal of the judgment.

The original and the amendatory contracts so set out in the plaintiff's petition are as follows:

"This obligation Witnesseth: That I have this day employed B. F. Proctor to adjust by suit or compromise a claim for myself and infants against the Louisville & Nashville Railroad Company for the death of my husband who was killed while acting as brakeman on November 22, 1911. Said Proctor is to have control of the claim and I am to give all the assistance in my power to him. I am to qualify as administratrix with the ap-

proval of said Proctor and he is to see that my bond is made, and is to control the funds, if any, belonging to the estate and any sum recovered for said injury and death, till paid by order of the court to the (persons entitled) thereto. This claim is not to be compromised without the mutual consent of said Proctor and myself. If it is compromised without his consent he is to receive a sum equal to five thousand dollars and if compromised by him without my consent he is to pay me ten thousand dollars or I may demand two-thirds of what he compromised for if I prefer.

"It is agreed that for his services said Proctor shall otherwise receive a sum equal to one-third received for said injury and death, if compromised before suit, but if suit is brought he is to receive a sum equal to one-half received. This contract shall be ratified by any administrator appointed. This December 26, 1911."

The first amendatory contract is as follows:

"In order to accommodate me and get support for myself and children till my claim against the L. & N. R. R. Co. is finally settled I do hereby agree to pay B. F. Proctor any and all sums of money furnished me or for my benefit with six per cent interest and to pay to Judge S. R. Crewdson the sum of four hundred dollars for his services and the sum of four hundred dollars to Hazelrigg & Hazelrigg and if my cause is appealed to the supreme court $800.00.

"It is further agreed that said Proctor is entitled to a sum equal to one-half of the $15,000.00 for which judgment was rendered in my favor in the Logan circuit court with one-half of such damages and interest, as may be recovered in the appeal, and from his one-half, which I hereby assign him, he is to pay back to me one-half the sum paid Judge Crewdson and one-half sum paid Hazelrigg & Hazelrigg, if any.

"It is further agreed that said Proctor will go my security and assist me in procuring the loan of twenty-five dollars per month beginning with October, 1913, and continuing until my claim is finally settled, at which time I am to pay and discharge same with interest with other sums due or to become due to said Proctor.

"It is agreed that this cause is not to be settled or compromised without our mutual consent, if it is done, then each agrees to pay the other the full amount of what would have been received if the judgment or judgments

had been paid in full as now or hereafter rendered. This Sept. 30, 1913.''

The second amendatory contract is as follows:

''This obligation made and entered into this the 9th day of December, 1913, between B. F. Proctor and Nora Strange in person and as administratrix of Claude Strange, Witnesseth: That the said Strange being in reduced circumstances, owing to the death of her husband, and without sufficient means to live upon, B. F. Proctor hereby agrees to stand as her surety for twenty-five dollars each month, beginning with this date.

''This contract is to end when the case now pending against the L. & N. R. R. Co. is settled. It is further agreed that said Strange is now indebted to said Proctor for money advanced to her and for rent of his house to this date, which she is to pay whether the case is settled as heretofore agreed, and it is further agreed that no settlement will be made with the railroad company without the mutual consent, that is, said Proctor cannot settle without the consent of said Strange, and said Strange cannot settle without the consent of said Proctor. This Dec. 9, 1913.''

The third amendatory contract is as follows:

''This instrument witnesseth: That the Louisville & Nashville Railroad Company having made a proposition to my attorney B. F. Proctor to pay the sum of $15,000.00 to settle my claim prosecuted as administratrix of Claude Strange together with the claim of W. H. Stewart's administratrix I now authorize my attorney to make a proposition to compromise my said claim independent of the claim of Stewart's administratrix, and said Proctor is authorized to settle my claim at $15,000.00 and all costs, including costs in the Court of Appeals, and is not to accept anything less without my written consent. In the event of a settlement the Louisville & Nashville Railroad Company is to draw a voucher payable to said Proctor and myself jointly and out of this sum I am to receive $7,500 as administratrix, and said Proctor is to receive the same sum, and we are to divide the fees of Judge Crewdson and Judge Hazelrigg as heretofore agreed. Said Proctor has been furnishing me money at the rate of $30 per month payable monthly to live upon, and he agrees to continue to furnish that sum till my case is finally settled, and out of the sum paid me I am to satisfy any money advanced to me as heretofore agreed. It is further agreed that if said Proctor wishes

to do so he may accept a less sum than $15,000.00 from the company for a settlement but is to pay me the $7,500.00, and if I accept a less sum I am to pay him the $7,500.00, unless he consents in writing to accept less. Witness my hand this the 11th day of March, 1914.''

The plaintiff, while asking in his prayer for the relief as above set forth, alleged in the petition that his services so rendered in that action were reasonably worth ten thousand dollars.

The answer of the railroad company, after denying the value of the services and that the settlement with Mrs. Strange was procured by fraud, in a second paragraph relies upon the terms of the original and supplemental contracts as being champertous and void, and alleges that the same were made solely for the use and benefit of the plaintiff, and had for their object, not the protection of his client in the presentation and prosecution of her claim, but were made and dictated by him for the sole purpose of pecuniary advantage to himself.

The defendant, Nora Strange, in her answer, denied that the contract of settlement had been procured from her by fraud or misrepresentation, and expressed a desire to have the same confirmed. She further denied that the company through its attorneys at the time of the settlement agreed with her to pay her attorney any amount except that it was understood at the time that under the law in this state her attorney could, if he desired, and if her contracts were valid and enforceable, compel the railroad company to pay him one-half the amount received by her.

The issues were completed by reply and rejoinder, and the lower court, having transferred the case to the equity docket, thereafter entered a judgment denying to the plaintiff the right to any recovery under his contracts, and holding them as a whole to be champertous and void, but on *quantum meruit* giving him a judgment against the railroad company for the sum of $1,800.00.

To that judgment each party excepted, and the plaintiff having filed his transcript and prosecuted an appeal to this court, the defendant has been granted a cross appeal.

In this court appellee has entered a motion to dismiss the appeal upon three grounds, the consideration of which was passed to the merits.

The first ground is wholly without merit; the judgment was entered in the circuit court on March 16, 1918,

and on January 27, 1920, the plaintiff filed a copy of the judgment in the clerk's office of this court and a summons was issued thereon for the appellee, and on the 14th day of July thereafter a transcript of the record was filed in the clerk's office, which was more than twenty days before the first day of the second term of this court after the granting of the appeal. McAllister's Admr. v. Stanley, et al., 186 Ky. 836.

The second ground is that the summons issued by the clerk of this court was not served on an agent of the company; but it is only necessary to say as to this contention that there is nothing in the record intimating or tending to show that such person was or was not its agent except the return on the process by the sheriff of Warren county, which shows the person upon whom it was served was such agent in that county. No affidavit is filed here, and there is nothing upon which to base the claim that he was not such agent except the bare statement of counsel in their written motion to dismiss the appeal.

The third ground is that the appeal should be dismissed because appellant, as set forth in the motion, is said to have collected the $1,800.00 judgment during the pendency of this appeal; but in this, as in the other, we are left wholly to the *ex parte* statement of counsel in the motion, without anything in the record to show it, and for that reason we deem it unnecessary to determine whether or not, if he had collected it, it would be good ground for dismissing the appeal.

Upon a motion to dismiss an appeal or to quash a summons which issued from this court, from the very nature of things we must accept the record as it appears; and there being no affidavit filed in support of such motion, but only a recital in the written motion of a state of fact not disclosed by the record the same will be overruled.

It follows from what we have said that the motion to dismiss the appeal is overruled.

Considering first the original contract of employment, it may be safely said that it discloses upon its face that it was wholly dictated by appellant and prepared with a design to put the whole litigation and the whole estate of the dead man in his custody and control and to place the widow, who subsequently was administratrix, wholly within his power and subject to his dictation.

It not only expressly says that appellant is to have the control of the claim, but in terms restricts the widow's right, guaranteed by law, to qualify as administratrix of her deceased husband, and in connection with that restriction is the agreement upon his part to see that her bond as such administratrix is made, in the event he should thereafter decide that she might exercise her right under the law to qualify. This agreement, to make her bond in the event that he should desire her to qualify, taken in connection with the attempted restriction upon her right so to do, must have been intended to place her further under his control; for if she had insisted upon qualifying in opposition to his wishes, he might have prevented her qualifying by declining to make the bond, which it is apparent throughout the record she could probably not have made in any other way.

In addition it was provided therein that he should have the control, not only of any fund which might be realized from a successful assertion of a claim for the death of the deceased, but of any other funds belonging to the estate, until such time as those funds might be distributed by an order of court.

He was not only to control and manage in his own way the suit for Strange's death, but he was to have control of that fund when it might be recovered and any other fund belonging to his estate before such recovery.

That is, he was to be attorney, administrator and sole advisor until such time as he might see proper to have the fund distributed. Not only so, but in addition he provides that the claim is not to be compromised without the mutual consent of himself and the widow, thereby taking from her the right to do that which the law guarantees her, namely, to settle or compromise her own litigation; and by doing so he was not only depriving her of a right given by law but he was contracting in opposition to a wholesome, well-recognized public policy which encourages the settlement and compromise of disputes and controversies.

But if there is in this contract one provision that is more vicious than all the others, it is the additional provision that if she should compromise without his consent he was to receive a five thousand dollar fee. An analysis of this provision will quickly disclose that she was thereby restricted and prevented from compromising her claim for less than five thousand dollars, for if she did so she would have it all to pay to him, in fact, if she had

compromised for less than that amount, under a strict interpretation of the contract, she would still owe him the difference between that amount and any less amount she might have accepted, and she and her children would have been left without compensation.

But it is contended by appellant that the objectionable features of this contract may be eliminated and disregarded, and that he should then be permitted to recover upon the contract as thus emasculated; and he relies upon the cases of Newport Rolling Mill Co. v. Hall, 147 Ky. 598, and Louisville Ry. Co. v. Burke, 149 Ky. 437.

In the Hall case it was only held, that in a contract between an attorney and a client, wherein it was provided that neither party should settle the claim without the presence or consent of the other, this being the only objectionable feature in it, that it might be eliminated and the plaintiff permitted to recover under the terms of the contract.

In the Burke case it was agreed by the client that he would not compromise the claim without the advice and consent of his attorney, and that if he did so for a sum less than $500, the attorney's fee should be $250; and the court held in that case that the agreement not to compromise was void, and that the client having compromised for $50, the attorney might recover only half of that amount.

It will be observed that in each of those cases there was merely an agreement upon the part of the client not to compromise without the consent of the attorney; but neither of those cases had many of the objectionable features which we have here.

In the Hall case the court, in holding that the contract there was severable, said:

"The general rule is that if the obnoxious feature of a contract can be eliminated, without impairing its symmetry as a whole, the courts will be inclined to adopt this view as the one most likely to express the intention of the parties; but if the good and bad are so interwoven that they cannot be separated without altering or destroying the general meaning and purpose of the contract, the good must go with the bad and the whole contract be set aside."

Let us analyze this contract under that rule and see whether any part of it can be upheld. If we eliminate from this contract the power which Proctor evidently sought, not only to control the litigation and the manner

of its conduct, not only to control who should or should not be the personal representative; if we eliminate the control of the whole funds of the estate, which he manifestly sought to control; if we eliminate from it the agreement by the widow not to compromise without his consent, and eliminate from it her agreement that if she should compromise it without his consent, she should pay him a $5,000.00 fee, there is left the bare employment by the widow of the appellant fixing a contingent fee. In this case the bare contract of employment and the fixing of the fee are so inextricably involved with and dependent upon the objectionable features which we have enumerated, that the whole contract must be held to be invalid.

The contract involved here is much more far reaching than the ones involved in either the Hall or the Burke cases; here not only was there an agreement by the client not to compromise without the consent of the attorney, but the attorney sought the control and management of the litigation, and full control of the selection of an administratrix, and full control for an indefinite period of all funds belonging to the estate. Under this contract the client had no voice in the management of the litigation and could not control or direct the manner of the prosecution of the case; under this contract the widow could not qualify as administratrix without his consent and could receive no part of any sum recovered until an indefinite time in the future; that is, at such time as the attorney might cause an order of distribution to be made.

To expurgate from the contract all the objectionable features would leave it unrecognizable and would so far change the tenor and effect of it as that we cannot assume it would have been entered into by the parties at all in such form.

There is nothing in any of the amendatory or supplemental contracts which relieves the original contract from any of its objectionable features; there is no provision in any one of them which tends to alleviate or make less objectionable the vice in the original instrument. On the contrary, it may be said, without going into the amendatory contracts, that they evidence throughout the persistent purpose of appellant to carry out his original idea of control and domination of the whole litigation, and to tighten his hold and increase his control of the administratrix and the whole subject matter of the litigation.

On this branch of the case we are in accord with the opinion of the chancellor below that the original contract was wholly void as against public policy, and that there can be no recovery on it.

The plaintiff entered a motion for an issue out of chancery and for a jury trial; but before this motion was acted upon the whole case was finally submitted for judgment, and in the argument the plaintiff himself and his counsel discussed fully the question as to the value of his services on *quantum meruit* theory as well as his right of recovery under the contract, and in the argument it was expressly agreed by them that the court should try the case and enter a judgment. Thereafter, however, the plaintiff filed a brief before the trial judge wherein it was insisted that if the case was to be settled on *quantum meruit* there should be an order of continuance and a jury trial directed. This the court properly refused to do and overruled the motion.

Clearly after the final submission of an equitable action for judgment, and after the argument of the case by counsel, it is too late to ask for a continuance and have a hearing before a jury of an issue out of chancery, and especially when the party had expressly agreed for the chancellor to enter a judgment on the whole case.

On the cross appeal it is insisted by appellee that in as much as the plaintiff sought no recovery on *quantum meruit,* the court erred to its prejudice in entering the judgment for $1,800.00.

It will be remembered that the plaintiff in his petition alleged the value of his services, and the prayer of his petition prayed for all proper relief.

So that the chancellor, when he came to enter a final judgment on a suit to recover on a contract which was void and upon which there could be no recovery, having before him evidence of the value of the service that appellant had rendered and the prayer for all proper relief, even though he held that the contract sued upon was void, adjudged that the attorney had not forfeited his right to compensation, and that he was entitled to a recovery on *quantum meruit,* and properly adjudged such a recovery. Civil Code, section 90; Proctor Coal Co. v. Tye & Denham, 123 Ky. 381.

The judgment is affirmed on the original and cross appeals.