## Louisa National Bank v. Paintsville National Bank et al.

(Decided May 24, 1935.)

W. D. O'NEAL and A. O. CARTER for appellant.

WHEELER & WHEELER and Z. WELLS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On November 18, 1910, Paintsville National Bank executed to Mrs. Alice Mayo this writing: "Paintsville, Ky. Nov. 18, 1910. Received of Alice Mayo, Seventy five hundred [$7500.00] Dollars of U. S. Bonds, deliverable to her order six months from date of notice, in bonds of same issue in her name or to her order, or cash equal to the par value of the bonds, at our option, for which we agree to pay her 2% in addition to the Government rate, bonds being 2% Consols of the issue of 1930. Paintsville National Bank by Jno. E. Buck-

ingham, Cashier." Thereafter the obligor therein paid to Mrs. Mayo the 4 per cent. on the $7,500 which it agreed to do in that paper. On February 27, 1920, Mrs. Mayo executed her demand note to the appellant and plaintiff below, the Louisa National Bank, and pledged as collateral security for it the above obligation of Paintsville National Bank, but which has since changed its name to "The Paintsville National Bank." The obligor in that paper never received any notice from the Louisa National Bank, Mrs. Mayo, or from any other source that she had pledged the paper to any one, until March 5, 1931, when it received notice from plaintiff that it held the paper as collateral to a demand note (or a renewal thereof) that Mrs. Mayo had first contracted on February 27, 1920, more than eleven years prior to such notification. Before the obligor therein and defendant below received such notice, Mrs. Mayo became indebted to it for borrowed money, evidenced by her notes in an aggregate sum of $12,200, which defendant could most certainly offset against its obligation of November 18, 1910, if it had continued to be held by Mrs. Mayo; and whether or not it may do so as against plaintiff, the assignee (as pledgee) thereof, is the sole question in this case.

After defendant received notice of the assignment or pledge of its obligation by Mrs. Mayo, to whom it was executed, it exercised the option therein reserved to discharge it by the payment of cash which it did by crediting Mrs. Mayo on its books with the amount due thereon and then canceling that account by crediting the amount on her $12,200 obligation to it. Later, plaintiff filed this action against defendant seeking a recovery against it of $7,500, with interest due, and which it claimed the right to do as holder of the instrument of date November 18, 1910, and the facts, supra, under which it became such. The answer of defendant denied some of the material facts averred in the petition; but the main defense interposed was the right of defendant to set off its obligation against the indebtedness of Mrs. Mayo to it, and which right accrued to it before it received notice of the pledging of it to plaintiff. The court sustained that defense and dismissed plaintiff's petition, to reverse which it prosecutes this appeal.

The disposition of the question involved requires of us, as indeed is true in all cases, to first determine

the exact question to be decided, and the first step in that direction in this case is to ascertain the nature of the obligation that defendant executed to Mrs. Mayo on November 18, 1910. That question becomes material, since there is a great diversity of opinion with the courts as to defendant's right to rely on the defense it interposed and which the court sustained, if the instrument is one possessing the characteristics of a bill of exchange, or commercial paper so as to be embraced by our Negotiable Instruments Act, and which class of obligations were formerly governed by the principles of that branch of the common law known as "The Law Merchant." Section 3720b-58 (and which is section 58 of the Negotiable Instruments Act) says, in part: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." Some courts hold that an offset, a counterclaim, or other defense resting upon wholly collateral transactions having no connection with nor in any manner growing out of the obligation sued on, are not embraced by the word "defenses" as employed in the inserted section 58 of our Negotiable Instrument Act, provided the instrument forming the basis of the action was at its inception strictly commercial and negotiable paper, notwithstanding the plaintiff as holder thereof acquired it after its maturity, and which deprived him of the benefits and privileges of a holder "in due course." Such defenses are denied by some courts, notwithstanding the jurisdiction of the lex loci contractus has a statute authorizing the assignment of bonds, bills, and notes for the payment of money and vesting the right of action thereon in the assignee, but preserving all defenses to the maker that he would have against the original payee, including the right of offset, as is done by section 474 of our present Statutes, which in its present form was enacted by chapter 120, p. 402, sec. 5, of the Acts of 1892, but which was a part of our statutory law long prior thereto.

Other courts adopt the same conclusion where there is no such corresponding statute as our section 474 within the jurisdiction; while others uphold the defense whether there is or not such a statute within the jurisdiction. The following authorities will furnish at least a partial statement of the condition of the law upon the question involved so far as it pertains to an

action on a strictly negotiable instrument, and which will be found to correspond with our statement of it, supra, Stegal v. Union Bank & Federal Trust Company (Va.) 176 S. E. 438, 448, 95 A. L. R. 582; Harris v. Esterbrook, 55 S. D. 538, 226 N. W. 751, 70 A. L. R. 241, the latter being an opinion rendered by the Supreme Court of the state of South Dakota, and the former one rendered by the Supreme Court of Appeals of the state of Virginia. The annotation to the Harris Case, beginning on page 245 of the A. L. R. publication in which it is reported, collates the cases from all of the American courts, and from which it will be found that the specific question now under consideration (i. e., the allowance of such defenses under the indicated circumstances) is by no means settled, and which permits courts in which the question has not theretofore been determined to reach its own conclusions as to the correct and most logical one. Text-writers necessarily set forth the different views pronounced by the various courts as shown by the above references, and it could accomplish no useful purpose to catalogue them in this opinion, but illustrations of which are the text in 24 R. C. L. 821, sec. 29, and in Brannan's Negotiable Instruments Law (4th Ed.) pp. 502, 503. Suffice it to say that we have examined them and find that the texts in each of them give the different conclusions of the courts and they vary as to the views of the authors when expressed, they of course being influenced by what they conclude is the best-reasoned conclusion. We are not called upon to take the one or the other position, or to express our views concerning the question, since, as we will now proceed to point out, our question is an entirely different one.

All of the authorities are of one accord that, in jurisdictions where there is a statute corresponding to section 474 of our Statutes, a set-off is available to the maker in a suit by an assignee on an obligation to pay money if the instrument does not possess the characteristics of commercial paper so as to be embraced by the Negotiable Instruments Statute. However, a few courts so universally holding deny the right of set-off (even in such latter cases) where it arose and was created after the transfer of the paper by the original obligee to the plaintiff, notwithstanding the maker thereof had no notice of such transfer. But the great majority of them make no such distinction and permit the

defense of set-off to be interposed in an action on such nonnegotiable instrument where the plaintiff acquired title to it by assignment from the original payee or from some intermediate assignee, provided the defense arose before notice of the assignment. 8 C. J. 52, sec. 54; 24 R. C. L. 819, sec. 26. The opinion in the Stegal Case, supra (which appears to be one taking an extreme view in denying the right of set-off against a holder of a negotiable instrument which he acquired after maturity), is nevertheless in perfect accord with the doctrine that the defense (set-off) is available against an assignee of a nonnegotiable instrument, although it arose or was created after its assignment to him and before the maker of the paper had notice thereof, and which approval of that right is thus stated in that opinion: "Immediately upon the enactment of a simple statute of set-offs it naturally followed, as a matter of course, that an assignee of a nonnegotiable instrument took it subject to set-offs [in favor of the promisor] to which it was subject in the hands of the assignor at the time of the assignment, and also subject to any set-offs against the assignor which the original promisor might acquire after the assignment before he received notice of it. See ante." Cases and authorities sustaining that view are inserted in subsequent portions of the opinion.

Having said this much concerning the right of an obligor in a chose in action to interpose the defense of set-off in an action thereon by a transferee when the obligation is a negotiable instrument, and also when it is not so, we will now proceed to determine the nature and characteristics of the instrument executed by defendant on November 18, 1910, to Mrs. Alice Mayo. We have but little trouble in doing so, since it is clearly what has come to be called and designated as a "nonnegotiable instrument," i. e., one not embraced by or subject to the rights and privileges conferred upon parties to a commercial instrument of the characteristics of a bill of exchange and embraced by the negotiable instrument statute. The essentials of such latter obligations are set forth in the first section of the act, which is section 3720b-1 of our present Statutes. The second requisite therein is, that the instrument in order to be a negotiable one within the purview of the act "must contain an unconditional promise or order to pay a sum certain in money." The promise made by de-

fendant to Mrs. Mayo, as contained in the writing it executed to her (and which as we have seen is the foundation of plaintiff's cause of action against defendant), does not meet the requirements of that subsection. It is true that under the provisions of section 5 of the Negotiable Instruments Statute, which is section 3720b-5 of our Statutes, the negotiability of the instrument is not destroyed where it "gives the *holder* an election to require something to be done in lieu of payment of money" (our italics), but the instrument with which we are dealing confers no such privilege on the *holder* (Mrs. Mayo or plaintiff as assignee thereof). It does, however, confer such a privilege on defendant as the maker thereof, in that it is given the option to discharge the obligation thereby assumed, by (a), returning to Mrs. Mayo the identical bonds at any time within six months after notice from her, or (b), the return to her within such time of similar bonds of the same value, or (c), paying her the cash value of such bonds at the time.

There is no law, statutory or otherwise, so far as we have been able to discover that allows such an alternative promise *by the maker* of the instrument in strictly commercial or negotiable paper, since to do so, would violate the inserted requirement, supra, that the promise must be unconditional (i. e., by the promisor), and when not so the instrument becomes an ordinary chose in action with all the rights and privileges attached to them by the law; one of which is assignability so as to vest the assignee with the right to maintain an action thereon in his own name, and with the right of the maker to interpose in defense of such an action any offset claim that he may have acquired as against the original obligee up to the time that he receives notice of the assignment. In addition to the provisions of section 474, supra, of our Statutes, section 19 of our Civil Code of Practice has long since been a part of our statutory law, and it says: "In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any discount, set-off or defense now allowed; and if the assignment be not authorized by statute the assignor must be a party, as plaintiff or defendant. This section does not apply to bills of exchange, nor to promissory notes placed upon the footing of bills of exchange, nor to common orders or checks."

It was enacted prior to the enactment of our Negotiable Instruments Statute, and its last sentence was intended to exclude from its operation bills of exchange and promissory notes which our then prevailing statutes (section 483) "placed on the same footing as foreign bills of exchange," and which exception no doubt applies to instruments embraced by our present Negotiable Instruments Statute. In the notes to that section and to section 474 of our Statutes, supra, will be found cases from this court upholding the right to interpose the defense of set-off against an assignee of a nonnegotiable instrument, notwithstanding the set-off may have arisen after the assignment to him but before the maker had notice thereof. Some of those cases are: Chiles v. Corn, 3 A. K. Marsh. 230, 231; Day v. Billingsly, 3 Bush, 157; Bitzer v. Mercke, 111 Ky. 299, 63 S. W. 771, 23 Ky. Law Rep. 670; Richie v. Cralle, 108 Ky. 483, 56 S. W. 963, 22 Ky. Law Rep. 160, and others found in the notes to section 96 of the Civil Code of Practice under the heading "Set-off." A case found in neither of the references is Union Bank & Trust Co. of Henderson v. Ford, 101 S. W. 347, 31 Ky. Law Rep. 8. Others will be found on page 77 of volume 4 of West's Kentucky Digest.

In substantiation of our conclusion, supra, that the instrument here involved is a nonnegotiable one because (if for no other reason) it embodies an alternative method of payment (two of which is not "in money"), we refer to the text of 8 C. J. 130, sec. 226, which says, "A promise or an order in the alternative for the payment of money or for the performance of some other act, or a promise or an order which reserves to the *maker* or the drawee the option to discharge the obligation by the performance of some act other than the payment of money, is not a negotiable bill or note; but where the 'holder' is given the option to receive payment in money or to surrender the instrument and demand the performance of some other act, the instrument has been held negotiable and valid," and which is because the Uniform Negotiable Instruments Law, to which we have referred, so provides. No text nor any opinion announces a contrary rule, since it is based on the plain and unambiguous express language of the Negotiable Instruments Statute and which uniformity among the courts renders it unnecessary for us to incumber the opinion with further supporting citations.

The involved instrument in this case, as we have seen, bore upon its face the alternative nature of defendant's promise to Mrs. Mayo. It expressly stated that it was a receipt showing that defendant had borrowed from her the property therein stated, and which, of course, created an obligation on its part to return to her the borrowed property, even if the writing had not said so. However, it also provided that defendant "at our [its] option" might pay her the cash "equal to the par value of the bonds." It was therefore only a conditional promise on its part to discharge its obligation by the payment of money, and which rendered the writing it executed a nonnegotiable one, and gave to the defendant the privilege of defending this action on it brought by plaintiff as assignee thereof with a set-off which it acquired before receiving notice of the transfer and assignment of the paper to plaintiff.

The defense here interposed was so acquired, and which was so stipulated by the parties at the trial. The court, therefore, properly held the defense available, and its judgment dismissing the petition is affirmed.

The whole court sitting.