In re WEHR CONSTRUCTORS, INC.

v.

ASSURANCE COMPANY
OF AMERICA.

No. 2012–SC–000221–CL.

Supreme Court of Kentucky.

Oct. 25, 2012.

As Modified on Denial of Rehearing
Dec. 20, 2012.

Kenneth Allen Bohnert, Richard M. Sullivan, Edward Francis Busch, Conliffe, Sandmann & Sullivan, Louisville, KY, Counsel for Wehr Constructors, Inc.

Vanessa Lynn Armstrong, U.S. District Court, Paducah, KY, Counsel for United States District Court, Western District of Kentucky.

Rickard L. Walter,. Nicholas Dean Kafer, Boehl, Stopher & Graves, LLP, Paducah, KY, Counsel for Assurance Company of America.

Opinion of the Court by Justice VENTERS.

Pursuant to CR 76.37(1),[1] this Court granted the certification request of the United States District Court for the Western District of Kentucky to answer the following question of Kentucky law:

**Whether an anti-assignment clause in an insurance policy that requires an insured to obtain the insurer's prior written consent before assigning a claim under the policy is enforceable or applicable when the claimed loss occurs before the assignment, or whether such a clause would, under those circumstances, be void as against public policy.**

For the reasons stated below, we conclude that under Kentucky law, a clause in an insurance policy that requires the in-

sured to obtain the insurer's prior written consent before assigning a claim for an insured loss under the policy is *not enforceable or applicable* to the assignment of a claim under the policy where the covered loss occurs *before* the assignment, and that such a clause would, under those circumstances, be void as against public policy.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Murray Calloway. County Hospital Corp. (Hospital) planned to build an addition onto its facilities. It purchased from Assurance Company of America (Assurance) a "builder's risk" insurance policy. The builder's risk policy included this provision:

**F. Transfer of Your Rights and Duties Under This Policy** Your rights and duties under this policy may not be transferred without [Assurance's] written consent except in the case of death of an individual named insured.

The Hospital contracted with Wehr Constructors, Inc. (Wehr) for the installation of concrete subsurfaces and vinyl floors as part of a project to expand the hospital. After installation, a portion of the floors and subsurface done by Wehr was damaged. The Hospital claimed a loss exceeding $75,000.00 and sought recompense under the builders risk policy, but Assurance denied the claim.

As a result of a dispute over its contract with the Hospital, Wehr filed suit against the Hospital in state court to recover money alleged to be due from the Hospital.

---

1. CR 76.37(1) states, in pertinent part: "If there are involved in any proceeding before ... any District Court of the United States ... questions of law of this state which may be determinative of the cause then pending before the originating court and as to which it appears to the party or the originating court that there is no controlling precedent in the decisions of the Supreme Court and the Court of Appeals of this state, the Kentucky Supreme Court may answer those questions of law when certified to it by the originating court[.]"

Eventually, Wehr and the Hospital settled the claim. As part of that settlement, the Hospital agreed to, and did, assign to Wehr any claim or rights the Hospital had against Assurance arising out of the builder's risk insurance policy. More specifically, the assignment states as follows:

> [The Hospital] hereby transfers and assigns to [Wehr], free and [clear] of any claims, liens and encumbrances, all of [the Hospital's] right, title and interest, legal or equitable, in any and all claims and causes of action for insurance coverage and insurance proceeds which [the Hospital] had, or may have had, under a Builders [sic] Risk Insurance policy No. EC43657395, believed to have been issued by Zurich Insurance Company, Inc.,[2] and which arose out of certain damage to the floor and subfloor that occurred at a construction project known as Murray Calloway County Hospital, located in Murray, Kentucky.

It is undisputed that this assignment occurred after the damage to the floors had occurred. Therefore, if the loss was in fact covered under the builders risk policy, Assurance was at the time of the assignment already liable for payment under the contract.

Wehr, as the Hospital's assignee, brought suit in federal court against Assurance seeking to recover payment due under the builder's risk policy for the damaged floor claim.[3] After filing an answer to the complaint, Assurance moved for judgment on the pleadings, invoking the anti-assignment provision of the policy quoted above. Assurance argued that because it had not consented to the assignment of the Hospital's claim to Wehr, the assignment was unenforceable against Assurance. In opposition to the motion Wehr argued that since the loss for which the Hospital sought coverage had already occurred at the time of the assignment and the basis for the insurer's potential liability was fixed, the Hospital's right to the proceeds under the policy was a chose in action that was freely assignable and, as such, the assignment did not require the insurer's consent, and that pursuant to the rule applicable in the vast majority of states, such an anti-assignment clause is unenforceable.

## II. MAJORITY AND MINORITY RULES

There are two primary views concerning the issue we address, one of which is overwhelmingly endorsed as the legally sound position upon general considerations of contract law, principles relating to the assignment of debt, restraints on the alienability of personal property, and public policy. The resolution of the District Court's question depends upon whether we adopt the majority rule, which favors Wehr, or the minority rule, which favors Assurance. Both sides agree that no Kentucky appellate court has spoken to the issue. We therefore begin our discussion with a synopsis of the majority and minority rules.

### A. The Majority Rule

In summary, the majority rule holds that an anti-assignment clause such as the one we examine is unenforceable once an insured occurrence takes place because at that point the insured is entitled to recovery under the policy; that right is a chose in action; a chose in action is a form of personal property; the anti-assignment provision amounts to a restraint upon the alienation of this property right; and, a restraint upon the alienation of property is

---

**2.** Assurance Company of America is a subsidiary of Zurich American Insurance Company.

**3.** See *Wehr Constructors, Inc. v. Assurance Company of America,* Case No. 5:11–CV–189 (Western Dist. of Ky.).

in opposition to public policy. As further noted below, other public policy considerations likewise weigh against the enforcement of an anti-assignment clause once a loss has occurred.

We begin by noting that *Couch on Insurance* identifies the majority rule relating to anti-assignment clauses such as the one we review as follows:

> Although there is some authority to the contrary, the great majority of courts adhere to the rule that general stipulations in policies prohibiting assignments of the policy, except with the consent of the insurer, apply only to assignments before loss, and do not prevent an assignment after loss[.]

3 *Couch on Ins.* § 35:8 (footnotes omitted). *See also* 5A John Alan Appleman & Jean Appleman, *Insurance Law & Practice* § 3458, at 408 (1970) ("A provision in a policy providing that the policy shall be void if assigned without the company's consent applies to assignment before loss. Such a clause restricting assignment does not in any way limit the right of assignment after the loss has occurred, and the rights of the parties become fixed thereby.").

Thus, the rationale, for the majority view is that an anti-assignment clause ordinarily only prohibits the assignment of the policy itself, but does not apply to assignment of a claim arising under the policy. The purpose of an anti-assignment clause is to protect the insurer from unforeseen exposure and increased liability that may ensue if the policy was assigned to an entity that the insurer would prefer not to insure; or, would have insured only at a higher premium. However, after an insured loss that gives rise to the insurer's liability, the insurer's risk cannot be increased by a change in the identity of the party to whom payment is to be made. An assignment of the policy, or rights under the policy, before the loss is incurred transfers the insurer's contractual relationship to a party with whom it never intended to contract, but an assignment after loss is simply the transfer of the right to a claim for money. The entity asserting the claim under those circumstances has no effect upon the insurer's duty under the policy. *See* 3 *Couch on Ins.* § 35:9.

A cogent explanation for the majority rule is found in *Conrad Brothers v. John Deere Ins. Co.*, 640 N.W.2d 231, 237–38 (Iowa 2001), which describes the rationale for this view as follows:

> [O]nce the loss has triggered the liability provisions of the insurance policy, an assignment is no longer regarded as a transfer of the actual policy. Instead, it is a transfer of a chose in action under the policy. At this point, the insurer-insured relationship is more analogous to that of a debtor and creditor, with the policy serving as evidence of the amount of debt owed. Moreover, if we permitted an insurer to avoid its contractual obligations by prohibiting all post-loss assignments, we could be granting the insurer a windfall. (Internal citations omitted).

The public policy invoked to avoid the effect of an anti-assignment clause after a loss has occurred is that enforcement of the provision unduly "restricts the relation of debtor and creditor by restricting or rendering, subject to the control of the insurer, an absolute right in the nature of a chose in action." 3 *Couch on Ins.* § 35:9. Thus, under the majority rule, once a loss occurs and the insurer's liability becomes fixed, the insured may assign its rights under the policy regardless of an anti-assignment clause.

In *Antal's Restaurant, Inc. v. Lumbermen's Mut. Casualty Co.*, 680 A.2d 1386 (D.C.1996), the District of Columbia Court of Appeals considered a post-loss assignment by the property owners to the restaurant owners following a fire at the busi-

ness, a situation substantially analogous to this case. The insurance company sought to enforce an anti-assignment agreement identical to the one we review. In explaining the difference between the enforceability of a pre-loss assignment and a post-loss assignment, the Court stated as follows:

> The reason for the distinction is that, whereas before loss the insurer might be unwilling to underwrite a risk for a person of questionable "integrity and prudence," after loss "the *delectus personae*[4] [is] no longer ... material" since "the insurer becomes absolutely a debtor to the assured for the amount of the actual loss...." *Ocean Accident & Guar. Corp.* [*v. Southwestern Bell Tel. Co.*], 100 F.2d [441] at 445–46 [ (8th Cir. 1939) ]. The assignment at that point is "of a chose in action—the right to compel [the insurer's] payment of insurance proceeds in accord with that interest ... recognized in the policy and defined in the contract."

*Id.* at 1388.[5]

Similarly, *Elat, Inc. v. Aetna Cas. and Sur. Co.*, 280 N.J.Super. 62, 654 A.2d 503 (N.J.Super.A.D.1995), persuasively stated the rationale for the rule as follows:

> The recognized reasons for the prohibition of assignments without the consent of the insurer had ceased. Its liability

had become fixed, and like any other chose in action was assignable regardless of the conditions of the policy in question. This is settled by the great weight of authority. In *Wood on Fire Insurance*, vol. 2, par. 361 the doctrine is stated thus: "Where the policy prohibits an assignment, an assignment without the insurer's consent invalidates it, but, in the absence of such a condition, the validity of the policy is not affected thereby, but still remains operative as to the assured; nor does an assignment after a loss has transpired invalidate it. In such case the insurer becomes absolutely a debtor to the assured for the amount of the actual loss, to the extent of the sum insured, and it may be transferred or assigned like any other debt. After a loss the *delectus personae* no longer becomes material, and even though the policy prohibits such an assignment, and provides that if so assigned the policy shall be void, it is held that such prohibition is void, as the insurer cannot restrict the assignment of a debt. The reasons that induce the restrictive clause have no existence or application after the risk has ceased."

*Id.* at 505 (quoting *Flint Frozen Foods v. Firemen's Ins. Co.*, 12 N.J.Super. 396, 79 A.2d 739 (Law.Div.1951)).[6]

---

**4.** *Black's* defines *delectus personae* as follows: "[Latin 'choice of the person'] The rule that when personal relations are important, a person cannot be compelled to associate with another person." BLACK'S LAW DICTIONARY (9th ed.2009).

**5.** For other cases applying the majority rule, *see, e.g., Alabama Farm Bureau Ins. Co. v. McCurry*, 336 So.2d 1109, 1112–13 (Ala. 1976); *Utica Mut. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 468 A.2d 315, 317 (Me.1983); *Gimbels Midwest, Inc. v. Northwestern Nat'l Ins. Co.*, 72 Wis.2d 84, 240 N.W.2d 140, 145 (1976); *Greco v. Oregon Mut. Fire Ins. Co.*, 191 Cal.App.2d 674, 12 Cal.Rptr. 802, 806–07 (1961); *Pacific Ins. Co. of New York v. R. L. Kimsey Cotton Co.*, 114 Ga.App. 411, 151

S.E.2d 541, 545 (1966); *Young v. Chicago Fed. Sav. & Loan Assoc.*, 180 Ill.App.3d 280, 129 Ill.Dec. 212, 535 N.E.2d 977, 981 (1989); *Krauss v. Central Ins. Co. of Baltimore*, 40 N.Y.S.2d 736, 741 (N.Y.Sup.Ct.1943).

**6.** *See also Pilkington N. Am., Inc. v. Travelers Cas. & Surety Co.*, 112 Ohio St.3d 482, 861 N.E.2d 121 (2006); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165 (2nd Cir.2006); *Bolz v. State Farm Mut. Auto. Ins. Co.*, 274 Kan. 420, 52 P.3d 898 (2002); *Conrad Brothers v. John Deere Ins. Co.*, 640 N.W.2d 231 (Iowa 2001); *International Rediscount Corp. v. Hartford Accident and Indemnity Co.*, 425 F.Supp. 669 (D.C.Del.1977); *SR Inter. Business Ins. Co., Ltd. v. World Trade Center Props.*, 375 F.Supp.2d 238 (S.D.N.Y.

In summary, the courts that have considered this issue have overwhelmingly concluded that once an insured occurrence has transpired, the insured's claim then ripens into a chose in action,[7] a type of personal property, which, pursuant to fundamental principles of debtor-creditor relationships, may not, ordinarily, be restrained from alienability.

## B. The Minority Rule

 The minority rule, on the other hand, holds that the unambiguous language of an anti-assignment clause, like the one present in this case, should be enforced as written. It is of course a fundamental tenet of this jurisdiction that the unambiguous language of a contract will be enforced as written and that the courts will not re-write the contract in contradiction of its plain meaning. "A fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Finance Servicing Corp. v. Wil-*

*der,* 47 S.W.3d 335, 341 (Ky.App.2001). "Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.,* 82 S.W.3d 869, 873 (Ky.2002). *See also* KRS 304.14–360 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, indorsement, or application attached to and made a part of the policy.")

Assurance contends that the legislature has made clear that our normal rule of enforcing contracts as written should apply in this case, thereby compelling adoption of the minority rule, by its enactment of KRS 304.14–250(1), which provides that "[a] policy may be assignable or not assignable, as provided by its terms"; however, this statute manifestly does not apply to the issue we review. The statute, rather, obviously provides that a provision prohibiting the assignment of an insurance *policy* is not assignable if the policy terms

---

2005); *R.L. Vallee, Inc. v. American Intern. Specialty Lines Ins. Co.,* 431 F.Supp.2d 428 (D.Vt.2006); *Better Const., Inc. v. National Union Fire Ins. Co. of Pittsburgh,* 651 So.2d 141 (Fla.App.1995); *St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co.,* 25 Ariz.App. 309, 543 P.2d 147 (1975); and *Action Auto Stores, Inc. v. United Capitol Ins. Co.,* 845 F.Supp. 417 (W.D.Mich.1993).

**7.** *Black's* defines and discusses the term "chose in action" as follows: chose in action. (17c) 1. A proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort.... 2. The right to bring an action to recover a debt, money, or thing. 3. Personal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit.—Also termed *thing in action.* BLACK'S LAW DICTIONARY (9th ed.2009).

"Chose, or, thing in action is, when a man hath cause, or may bring an action for some

duty due to him; as an action of debt ... and because they are things whereof a man is not possessed, but for recovery of them is driven to his action, they are called things in action." *Termes de la Ley* 85 (1st Am. ed. 1812).

"The term *chose in action* has been in common use for a long time, but some doubts have been recently raised as to its precise meaning. (*See Law Quarterly Review* for 1893, 1894, 1895.) A Divisional Court, however, has now given us the following definition: ' "chose in action" is a known legal expression used to describe all personal rights of property which can only be claimed or enforced by action, and not by taking physical possession.' *Torkington v. Magee,* [1902] 2 K.B. p. 430. The phrase 'rights of property' does not seem a very happy one, but it is quite clear that the court meant to include under the term chose in action rights under a contract and rights of action arising from breach of contract." William R. Anson, *Principles of the Law of Contract* 362 n. (b) (Arthur L. Corbin ed., 3d Am. ed.1919).

so provide. That, however, is far different from a provision prohibiting the assignment of a ripened *claim* after an insured occurrence has occurred under the policy thereby resulting in a chose in action belonging to the insured. Other courts which have considered this identical provision have identified and applied this distinction. *See, e.g., Santiago v. Safeway Ins. Co.,* 196 Ga.App. 480, 396 S.E.2d 506 (1990) (Applying substantially identical statute O.C.G.A. § 33–24–17, and holding "No right of the insurer being affected by the assignments of the policies, it would be a mere act of caprice or bad faith for it to take advantage of the stipulation that the transfers were subject to its consent, by withholding such consent in order to defeat the claim of the assignee."); *Lexington Ins. Co. v. Simkins Industries, Inc.,* 704 So.2d 1384 (Fla.1998) (applying Section 627.422, Florida Statutes (1995), which is substantially identical to KRS 304.14–250(1), and noting that the insurance company "concedes that an insured may assign insurance proceeds to a third party after a loss, even without the consent of the insurer."). Because the distinction is manifest, we follow these decisions and hold that KRS 304.14–250(1) is not, as Assurance argues, applicable to the issue we review.

The low esteem for the minority rule may be well-illustrated by the observation that the only cases Assurance cites us to applying the rule are cases applying Texas law. *See Texas Farmers Insurance Co. v. Gerdes,* 880 S.W.2d 215, 219 (Tex.App.-Fort Worth 1994); *Texas Pacific Indemnity Co. v. Atlantic Richfield,* 846 S.W.2d 580, 583 (Tex.App.-Houston [14th Dist.] 1993); *Conoco, Inc. v. Republic Insurance Co.,* 819 F.2d 120, 124 (5th Cir.1987); and *Keller Foundations, Inc. v. Wausau Underwriters Insurance Co.,* 626 F.3d 871 (5th Cir.2010) (applying Texas law).

In upholding non-assignment clauses post-loss, the Texas courts apply a frame-work familiar to our courts as described above; that is, they apply the plain meaning of the contractual provision as written:

> Generally, a contract of insurance is subject to the same rules of construction as other contracts. *National Union Fire Ins. Co. v. Hudson Energy Co., Inc.,* 811 S.W.2d 552, 555 (Tex.1991). If the insurance contract is worded so that it can be given a certain definite meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *GT & MC, Inc. v. Texas City Refining, Inc.,* 822 S.W.2d 252, 255–56 (Tex.App.-Houston [1st Dist.] 1991, writ denied). Moreover, where there is no ambiguity, it is the court's duty to give words their plain meaning. *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984). The non-assignment clause, contained in the General Provisions portion of the contract, is unambiguous and provides:
>
> > Your rights and duties under this policy may not be assigned without our written consent.
>
> Non-assignment clauses have been consistently enforced by Texas courts, *Island Recreational Dev. Corp. v. Republic of Texas Savings Ass'n,* 710 S.W.2d 551, 556 (Tex.1986) (opinion on reh'g) (letter of commitment); *Cloughly v. NBC Bank–Seguin, N.A.,* 773 S.W.2d 652, 655 (Tex.App.-San Antonio 1989, writ denied), and by the Fifth Circuit applying Texas law. *Conoco, Inc. v. Republic Ins. Co.,* 819 F.2d 120, 123 (5th Cir.1987). In addition, the prohibition against the assignment of rights by a named insured to an insurance contract has been upheld by this court. *Dallas County Hospital Dist. v. Pioneer Casualty Co.,* 402 S.W.2d 287, 288 (Tex.Civ. App.–Fort Worth 1966, writ ref'd n.r.e.).

*Gerdes,* 880 S.W.2d at 217–218 (Tex.App.-Fort Worth 1994).

Thus, adoption of the minority rule would require us to simply apply the term as it is written according to our well-established principles of contract interpretation; however, this would also require us to at the same time conclude that the public policy considerations identified in our discussion of the majority rule do not compel a deviation from our usual rules of contract construction.

## III. THE MAJORITY RULE BETTER SERVES THE PUBLIC INTEREST

■ We begin this section of our discussion by again noting that " 'in the absence of ambiguity a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (citations omitted). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky.2010).

Here, the language of the contract provision is not ambiguous. The provision is captioned "F. Transfer of Your Rights and Duties Under This Policy." The provision itself straight-forwardly directs that "Your rights and duties under this policy may not be transferred without [Assurance's] written consent except in the case of death of an individual named insured." Thus, the contractual language itself plainly and obviously prohibits the Hospital from assigning its rights under the policy to anyone at anytime absent Assurance's consent, except in the case of the death of the in-

sured. Accordingly, our preference for enforcing a contract pursuant to its plain language would strongly favor the minority position; particularly, as here, where the parties are of equal bargaining power. In this vein, if the Hospital, as an entity of strong bargaining power,[8] was opposed to the provision as written, it could have bargained to have the clause apply only to pre-occurrence assignments or shopped elsewhere for its insurance. Accordingly, there is substantial merit to Assurance's position.

■ Nevertheless, as necessity may require, contractual provisions may be held to be unenforceable as against public policy. *See, e.g., City of Hazard Municipal Housing Commission v. Hinch*, 411 S.W.2d 686 (Ky.1967) ("A contract for exemption from liability for negligence is generally void and unenforceable if it is violative of the law or contrary to some rule of public policy."). Further, we have fully considered that the public policy of the Commonwealth is normally expressed through the acts of the legislature, and not through decisions issued by the courts. *Com. ex rel. Cowan v. Wilkinson*, 828 S.W.2d 610, 614 (Ky.1992) ("The establishment of public policy is granted to the legislature alone. It is beyond the power of a court to vitiate an act of the legislature on the grounds that public policy promulgated therein is contrary to what the court considers to be in the public interest. It is the prerogative of the legislature to declare that acts constitute a violation of public policy.").[9]

However, as discussed above, we reject Assurance's argument that KRS 304.14–

8. As distinguished from an individual member of the general public, who will normally have considerably less bargaining power than the insurance company from whom he purchases his policy, and thus will generally be com-

pelled to accept the company's standardized adhesion contract.

9. *Overruled on other grounds* by *Com. ex rel. Conway v. Thompson*, 300 S.W.3d 152 (Ky. 2009).

250(1) expresses the public policy of the legislature in regard to the enforceability of a non-assignment clause post-loss. Nor do we find from any other source a specific expression of the legislature's intent in this area. Accordingly, in our review we are not constrained by a specific public policy preference expressed by the legislature, and so may undertake for ourselves to define the public policy in this particular area of the law. *Giuliani v. Guiler,* 951 S.W.2d 318, 321 (Ky.1997) (In absence of a legislative decree, courts may adopt and apply public policy principles.).

Based upon the authorities cited above in our discussion of the majority rule, we believe that the relevant public policy interests are best served by our adoption of the majority rule that a non-assignment clause in an insurance policy, while certainly enforceable *prior* to an occurrence of a covered loss, is not enforceable for assignments made *after* the occurrence. This conclusion is fully consistent with our prior holdings adverse to contractual provisions tending to restrain the alienability of choses in action, which, as explained above, is the principal underpinning of the majority rule.

■ "[A] chose in action more properly includes the right both of the thing itself and of the right of action as annexed to it. . . . Choses in action are personal property[.]" *Button v. Drake,* 302 Ky. 517, 195 S.W.2d 66, 69 (Ky.1946). *See also* 63C Am.Jur.2d Property § 22, Choses in Action ("A chose in action is a personal right not reduced into possession, but recoverable by a suit at law. It has been defined also as a thing of which one has only a right of possession rather than actual possession.").

■ "The common-law rule against restraint on alienation was designed to prevent the taking from the owner of the power to alienate property." *Three Rivers Rock Co. v. Reed Crushed Stone Co.,* 530 S.W.2d 202, 205 (Ky.1975). Thus, clearly, restraints on alienation are not viewed favorably, as public policy in Kentucky supports "the right of a person to be free and uninhibited in the disposition of his property[.]" *Id.; see also Central Bank & Trust Co. v. Kincaid,* 617 S.W.2d 32, 33 (Ky. 1981) ("The common-law rule against restraint on alienation was designed to prevent the taking from the owner of the power to alienate property and is not favored in law."); *St. Matthews Motor Co. v. Schnepp,* 306 Ky. 823, 209 S.W.2d 481, 482 (1948).

■ Further, "It is the settled law . . . . that an assignee of a chose in action may maintain suit thereon in his own name, since by the assignment he becomes vested with title and is entitled to the proceeds of the assigned chose[.]" *Fields' Adm'r v. Perry County State Bank,* 214 Ky. 24, 282 S.W. 555 (1926); *Louisa Nat. Bank v. Paintsville Nat. Bank,* 260 Ky. 327, 85 S.W.2d 668 (1935).

■ The contractual provision we review, therefore, is fundamentally in opposition to our Commonwealth's long-standing rules relating to restraints upon the alienability of choses in action. Further, Assurance has presented no persuasive reason for us to deviate from the settled proposition that restraints on alienation of property, including personal property, are to be stringently disfavored. We therefore, resolve the request of the United States District Court for the Western District of Kentucky, by adopting the majority rule. An anti-assignment clause in an insurance policy that requires an insured to obtain the insurer's prior written consent before assigning the claim under the policy is *not* enforceable or applicable when the claimed loss occurs before the assignment; such a clause would, under those circumstances, be void as against public policy.

It is also worth noting that the majority rule also facilitates our important public policy of encouraging settlements by the parties to a lawsuit by facilitating settlement agreements, as well-illustrated by what occurred in this case. *Lexington–Fayette Urban County Government v. Lex. Herald–Leader Co.,* 941 S.W.2d 469, 472 (Ky.1997) ("We recognize the important public policy served by those measures which encourage settlement....."); *Proctor v. Louisville & N. R. Co.,* 192 Ky. 330, 233 S.W. 736, 739 (Ky.1921) ("[I]in addition he provides that the claim is not to be compromised without the mutual consent of himself and the widow, thereby taking from her the right to do that which the law guarantees her—namely, to settle or compromise her own litigation; and by so doing he was not only depriving her of a right given by law, but he was contracting in opposition to *a wholesome, well-recognized public policy which encourages the settlement and compromise of disputes and controversies")* (emphasis added).

## IV. CONCLUSION

For the reasons stated, we conclude that under Kentucky law, an anti-assignment clause in an insurance policy that requires an insured to obtain the insurer's prior written consent before assigning the claim under the policy is *not* enforceable or applicable when the claimed loss occurs before the assignment; such a clause would, under those circumstances, be void as against public policy.

The law is hereby certified to the United States District Court for the Western District of Kentucky.

MINTON, C.J., ABRAMSON, CUNNINGHAM, NOBLE and SCOTT, JJ., concur. NOBLE, J., also concurs, by separate opinion. SCHRODER, J., not sitting.

NOBLE, J., concurring:

In addition to the policy rationale in the Opinion of the Court, I believe this case can be resolved as a pure legal question. The limiting language in the policy, "Your rights and duties under this policy may not be transferred without [Assurance's] written consent except in the case of death of an individual named insured," does not state whether the limitation applies before or after an occurrence. This creates a latent ambiguity in answering the raised question of when the clause applies, and thus this Court must construe the term. I would interpret this latent ambiguity to mean that it does not apply after a claim is made, thereby giving substantive support to the Court's policy decision.