NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0119n.06

Case No. 24-5724

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Feb 28, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| MICHAELA JEFFERY, | ) | ON APPEAL FROM THE |
| Plaintiff - Appellant, | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
|  | ) |  |
| MEDICAL PROTECTIVE COMPANY, | ) | O P I N I O N |
| Defendant - Appellee. | ) |  |

Before: McKEAGUE, KETHLEDGE, and READLER, Circuit Judges.

**McKEAGUE, Circuit Judge.** Michaela Jeffery received negligent periodontal care from Dr. Justin Clemens. Jeffery sued Clemens for negligence in state court and obtained a default judgment in her favor. Now, Jeffery wants Clemens's insurance provider, Medical Protective Company (MedPro), to indemnify the judgment.

But MedPro says it doesn't have to pay. Under the terms of Clemens's insurance policy, MedPro was obligated to pay damages for a "potential claim" reported during the policy's coverage period. In MedPro's view, Jeffery failed to provide the required information about her "potential claim" against Clemens before his policy expired. The district court agreed and issued summary judgment in MedPro's favor.

On appeal, Jeffery argues that there is a genuine dispute of material fact as to (1) whether MedPro must indemnify the judgment against Clemens under the terms of his insurance policy,

and (2) whether MedPro acted in "bad faith" in violation of the Kentucky Unfair Claims Settlement Practice Act (KUCSPA). Because Jeffery did not provide MedPro with "all reasonably obtainable information" about her potential claim, MedPro had no contractual duty to Clemens. And because there was no contractual duty, her KUCSPA claim necessarily fails. Thus, we **AFFIRM** the district court's grant of summary judgment to MedPro.

## I.

## A.

In October 2013, Jeffery had a problem with one of her teeth. Her regular dentist referred her to Clemens, a periodontist, for a consultation. Jeffery told her dentist that she did not want her tooth removed. But during the consultation, Clemens pulled her tooth and inserted two implants in its place. He then charged Jeffery over $7,000 for the procedure.

After a follow-up visit with Clemens, Jeffery returned to her regular dentist's office because the procedure caused pressure and discomfort. The dentist made adjustments that provided temporary relief. When Jeffery visited Clemens again in December 2013, Clemens said that the area was healing normally. Clemens then asked for another $2,810.

In February 2014, Jeffery was in significant pain. She felt throbbing and aching all the way into her eye. But when she called Clemens's office to schedule a visit, Clemens was not available. Eventually, Clemens's fiancé—who was also a periodontist—told Jeffery that Clemens's office shut down. A scan of Jeffery's teeth revealed that her implants failed and that she had an infection. Jeffery needed extensive and expensive treatment to repair the damage.

Jeffery ultimately filed a complaint against Clemens with the Kentucky Board of Dentistry. The Board determined that Clemens "may be unfit to practice dentistry" and ordered Clemens to

surrender his dental license. Board of Dentistry Order, R.46-3 at PageID 405. In the following months, Jeffery attempted to contact Clemens via Facebook. Clemens never responded.

**B.**

Shortly after Jeffery learned that her implants failed, she retained attorney Alfred Welsh. When Welsh agreed to represent Jeffery, he did not know which insurance company provided professional liability coverage to Clemens. But based on his experience, Welsh knew that MedPro frequently insured dentists and physicians. So on April 15, 2014, Welsh contacted MedPro to ask if it covered Clemens.

Welsh called MedPro four times on April 15. During the first call, Welsh explained why he was calling and asked whether MedPro insured Clemens. A MedPro representative confirmed that it did. Welsh then asked for the name of the claims adjustor assigned to Clemens. Because there was no open claim against Clemens at that time, the representative said that George Seifert, a claims specialist, would handle the matter. The representative logged the call as a "new claim" within MedPro's internal database.

During the third call, Welsh contacted Seifert directly.[1] Welsh explained that he represented Jeffery and planned to pursue a claim against Clemens for his negligent periodontal care. But Welsh did not provide specific information about Jeffery's implants, pain, or visits to Clemens's office. Instead, Welsh was "very general" during the call because he did not know the full extent of the damage to Jeffery's tooth. Welsh Dep., R.64 at PageID 953. In short, whatever specifics Welsh knew about Jeffery's treatment were not discussed with Seifert.

---

[1] Welsh's second and fourth calls went to Seifert's voicemail.

At Seifert's request, Welsh faxed a letter to Seifert later that day. The letter reiterated that Welsh represented Jeffery and asked Seifert to contact Welsh to discuss the matter. One month later, Seifert sent a letter acknowledging receipt of Welsh's faxed letter and confirming that MedPro insured Clemens. Seifert then asked Welsh to provide additional materials supporting Jeffery's claim, including a written report from a healthcare professional, records, bills, and a summary of Jeffery's current condition.

In July 2014—nearly three months after his initial calls to MedPro—Welsh provided detailed information about Jeffery's treatment. He included the name of Jeffery's regular dentist, how much Clemens charged for the procedure, and details about her follow-up appointments. In August, Welsh sent another letter with more information about the cost of Jeffery's treatment. In this follow-up letter, Welsh explicitly stated that he was "making a claim for the negligence of Dr. Clemens which resulted in permanent problems." Welsh Letter to MedPro, R.46-11 at PageID 417.

MedPro ultimately declined to cover Jeffery's claim. In a letter to Welsh, MedPro's outside counsel explained that because Clemens failed to pay his insurance premium, his policy expired on April 27, 2014.[2] The letter further asserted that under the terms of Clemens's policy, only Clemens could report a claim, and he never responded to MedPro's inquiries. The letter then noted that even if a third party could report a claim, Welsh did not provide "an express written demand for money as compensation for civil damages" during the coverage period. MedPro Letter to

---

[2] Under the original terms of Clemens's insurance policy, MedPro agreed to provide coverage from June 2013 to June 2014. But MedPro only had a duty to perform under the policy "upon payment of the premium when due." Insurance Policy, R.46-15 at PageID 432. MedPro repeatedly notified Clemens that his policy would expire unless he paid his premium, but Clemens never responded. Jeffery does not dispute that because Clemens failed to pay his premium, the policy expired on April 27, 2014.

Welsh, R.46-13 at PageID 422. Since "no claim was timely reported," MedPro denied coverage. *Id.*

**C.**

Shortly after MedPro denied coverage, Jeffery filed a complaint against Clemens in state court. MedPro did not appear on Clemens's behalf or otherwise defend him in court. In 2016, the court granted a default judgment in Jeffery's favor and awarded her $283,095 in damages.

Over two years later, Jeffery filed a complaint against MedPro in state court, alleging that MedPro was liable for the judgment under the KUCSPA and theories of promissory and equitable estoppel. MedPro removed the case to federal court and moved for judgment on the pleadings. The district court granted MedPro's motion, but Jeffery successfully moved to amend her complaint. In her amended complaint, Jeffery sought (1) a declaration that MedPro was obligated to indemnify Clemens, and (2) relief under the KUCSPA. The court agreed to stay Jeffery's KUCSPA claim until the declaratory-relief claim was resolved.

After Jeffery filed her amended complaint, MedPro again moved for judgment on the pleadings. MedPro argued that it was only obligated to provide coverage if it received notice of a "claim" or a "potential claim" within the coverage period. In MedPro's view, it received neither. But the district court disagreed, concluding that Jeffery plausibly alleged that she provided notice of a potential claim before Clemens's insurance policy expired.

After discovery, both parties moved for summary judgment. Jeffery claimed that Welsh's phone call with Seifert and subsequent letter sufficiently notified MedPro of a potential claim. In response, MedPro argued that (1) only Clemens could provide notice of a potential claim, and (2) in any case, the phone call and letter did not sufficiently notify MedPro of a potential claim because Welsh failed to provide "all reasonably obtainable information."

The district court granted summary judgment to MedPro. The court first concluded that a third party could, in theory, provide notice of a potential claim to MedPro. But in this case, Welsh failed to provide MedPro with all the information that he and Jeffery knew about Clemens's treatment, as he admitted to being "aware of many details on April 15 that he did not share with MedPro." Order, R.61 at PageID 849. Because sufficient notice was a "condition precedent" to MedPro's performance under the insurance policy, the court held that MedPro had no obligation to indemnify Clemens. *Id.*

After the district court granted summary judgment on the declaratory-relief claim—but before it entered judgment—Jeffery moved to "alter or amend the judgment." Jeffery claimed that the court mischaracterized Welsh's deposition, as Welsh never admitted to withholding information. To support its motion, Jeffery attached an affidavit by Welsh stating that he told MedPro "all relevant malpractice information [he] knew of as of April 15, 2014." Welsh Affidavit, R.67-3 at PageID 1023. The court denied Jeffery's motion because she was merely "relitigat[ing] the motion for summary judgment with new theories and evidence that were available to her when she briefed the original motion." Order, R.70 at PageID 1213. After additional briefing, the court granted MedPro's motion for summary judgment on Jeffery's KUCSPA claim because "absent a contractual obligation, there simply is no bad faith cause of action" under the KUCSPA. Order, R.82 at PageID 1288 (citation omitted). The court then entered a final judgment in MedPro's favor.

Jeffery timely appealed.

## II.

Jeffery argues that the district court erroneously granted summary judgment to MedPro on her claims for a "declaration of rights" and relief under the KUCSPA. We review the district

court's grant of summary judgment, including the district court's interpretation of contracts and state statutes, de novo. *See Cash-Darling v. Recycling Equip., Inc.*, 62 F.4th 969, 974–75 (6th Cir. 2023); *AES-Apex Emp. Servs., Inc. v. Rotondo*, 924 F.3d 857, 862 (6th Cir. 2019). We must affirm when there is no genuine dispute of any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

**A.**

In her amended complaint, Jeffery asked the district court to declare that MedPro had a contractual duty to indemnify the judgment against Clemens. But the court concluded that the event triggering MedPro's obligation under the policy—sufficient notice of a potential claim—did not occur during the policy's coverage period. On appeal, Jeffery claims that there is a genuine dispute as to whether she provided the requisite notice to MedPro. We disagree.

**1.**

When evaluating Clemens's insurance policy, we apply Kentucky law. *See Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000) ("In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state."). Kentucky law provides that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, indorsement, or application attached to and made a part of the policy." Ky. Rev. Stat. § 304.14-360. Courts generally resolve "perceived ambiguities and uncertainties in the policy terms" in favor of the insured. *Thomas v. State Farm Fire & Cas. Co.*, 626 S.W.3d 504, 507 (Ky. 2021). But we cannot rely on a "nonexistent ambiguity" to "enlarge the risk to the insurer." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226–27 (Ky. 1994). In other

words, "when the terms of an insurance contract are unambiguous and not unreasonable, they will be enforced as written." *Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021).

The key provision of Clemens's insurance policy is an endorsement revising the original terms of the policy. The endorsement provides:

> In consideration of the payment of the premium and subject to the limits of liability and the other terms of this policy, [MedPro] hereby agrees to defend and pay damages, in the name and on behalf of the Insured or his or her estate,
>
> A.    In any claim first made, or potential claim first brought to the Insured's attention, during the term of this policy based upon professional services rendered, or which should have been rendered, after the retroactive date by the Insured, or any other person for whose acts or omissions the Insured is legally responsible, in the practice of the Insured's profession as hereinafter limited and defined.
>
> However, [MedPro] shall have no duty to defend or pay damages:
>
> 1.    on a claim unless it was reported to [MedPro] during the term of this policy or thirty (30) days thereafter.
> 2.    on a potential claim unless it was reported to [MedPro] during the term of this policy and the report includes all reasonably obtainable information, including the time, place and circumstances of the incident; the nature and extent of the patient's injuries; and the names and addresses of the patient and any available witnesses.

Insurance Policy, R.46-15 at PageID 442.

This provision does two things. First, it explains *when* Clemens could submit a claim to MedPro. Specifically, Clemens's policy is a "claims-made-and-reported" policy, which means that it "provides coverage only for claims *made* against the insured and *reported to* the insurer during the life of the policy." *Ky. State Univ. v. Darwin Nat'l Assurance Co.*, 677 S.W.3d 294, 305 (Ky. 2023) (quoting *C.A. Jones Mgmt. Grp., LLC v. Scottsdale Indem. Co.*, No. 13-CV-173, 2016 WL

3460445, at *5 (W.D. Ky. June 21, 2016)). A claims-made-and-reported policy "must be construed as it is written." *Id.* at 306 (citation omitted).[3]

Second, the provision defines *what* information must be provided to MedPro. The policy makes a distinction between "claims" and "potential claims." The policy defines a "claim" as "an express written demand for money as compensation for civil damages." Insurance Policy, R.46-15 at PageID 443. A "potential claim" is "an incident which the Insured reasonably believes will result in a claim for damages." *Id.* The district court concluded that MedPro did not receive notice of a "claim," and Jeffery does not dispute that finding here. Thus, the only remaining question is whether Jeffery provided sufficient notice of a "potential claim" during Clemens's coverage period.[4]

Providing sufficient notice of a potential claim is a condition precedent to MedPro's obligations under the insurance policy. *See Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 785 (Ky. 2017) ("Condition precedent is a legal term of art with a clear meaning: An act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." (internal quotation marks omitted)). That is, MedPro had no

---

[3] In the district court, the parties disagreed about whether the "notice-prejudice" rule applies to Clemens's insurance policy. In short, the notice-prejudice rule provides that "an insurer cannot withdraw coverage on the ground that a notice condition has not been met unless the insurer can show that it was prejudiced by the act of the insured." *Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 801 (Ky. 1991). The Kentucky Supreme Court recently clarified that, generally, the notice-prejudice rule does not apply to claims-made-and-reported policies with unambiguous notice requirements. *See Ky. State Univ.*, 677 S.W.3d at 306. Instead, the "[p]arties are bound by the clear and unambiguous terms of their contracts." *Id.* (citation omitted). As Jeffery concedes on appeal, MedPro does not need to show that it was prejudiced by the insufficient notice of a potential claim.

[4] In its motion for summary judgment, MedPro also argued that only Clemens—not a third party—could notify MedPro of a potential claim. But the district court found that Clemens's policy did not bar a third party from reporting a potential claim on Clemens's behalf. We assume, without deciding, that Clemens's policy permitted a third party to put MedPro on notice of a potential claim.

duty to indemnify Clemens unless Jeffery provided MedPro with "all reasonably obtainable information" about her potential claim before the policy expired on April 27, 2014. To determine whether Jeffery satisfied this condition precedent, we compare the information that Jeffery and Welsh could reasonably obtain with the information that Welsh disclosed to MedPro.

By the time Welsh spoke with Seifert, he knew several details about Jeffery's periodontal treatment. He was aware that the dispute arose when Jeffery's regular dentist referred her to Clemens. He also knew that (1) Clemens inserted two implants that later caused Jeffery to suffer pain; (2) Jeffery called Clemens's office and learned that Clemens had "absconded"; (3) Jeffery went to Clemens's office for an x-ray; (4) the x-ray revealed that Jeffery's implants were missing; and (5) Jeffery's regular dentist was involved in her follow-up treatment. Moreover, Jeffery retained Welsh in February 2014 and let him handle "pretty much all of" the dispute. Later that month, Jeffery filed her complaint against Clemens with the Kentucky Board of Dentistry. In the complaint, Jeffery described her initial conversation with her dentist, her visits to Clemens's office, her payments to Clemens, the pain she experienced after Clemens inserted the implants, her attempts to contact Clemens before he disappeared, and the nature of her resulting injuries. Jeffery listed Welsh as a person "who may provide additional information," and Welsh admitted that he "probably" knew the facts contained in the Board of Dentistry complaint prior to April 15.

But Welsh did not provide those details to MedPro during the April 15 phone calls. During the initial call to MedPro, Welsh did not provide "specifics about the treatment." Welsh Dep., R.64 at PageID 952–53. During the call with Seifert, Welsh was "very general." *Id.* at PageID 953. Welsh conceded that he would not have gone into "[w]hatever specifics [he] knew" about Clemens's negligent treatment. *Id.* at PageID 955. And in Welsh's follow-up letter to Seifert later that day, he did not include any additional information about the potential claim. Because Welsh

did not provide the "specifics" of what he knew about Jeffery's case to MedPro on April 15, he failed to provide all reasonably obtainable information before Clemens's coverage period expired. Thus, the condition precedent to MedPro's duty to indemnify Clemens did not occur.

**2.**

Jeffery's myriad counterarguments are unavailing. First, she argues that the scope of "reasonably obtainable information" depends on who provided notice to MedPro. That is, the proper question for the factfinder is whether Welsh provided notice of what *he* knew on April 15, not what *Jeffery* knew. *See* Appellant Br. at 33–34 ("[T]he District Court erred by requiring Al Welsh to provide everything that Michaela Jeffery knew about her claim to [MedPro]."). We first note that the premise of Jeffery's argument—that Welsh could not "reasonably obtain" information from his own client—is dubious. But even if we accept Jeffery's premise, her argument still fails. Welsh admitted that by the time he called MedPro on April 15, he was personally aware of when the dispute arose, the procedure Clemens performed, the pain Jeffery suffered, Clemens's abandonment, Jeffery's subsequent x-ray, and the name of Jeffery's regular dentist. Jeffery also told him about her experience in "some general detail," and he was "probably" aware of the facts contained in Jeffery's complaint to the Kentucky Board of Dentistry. Welsh Dep., R.64 at PageID 956. But during Welsh's phone calls with MedPro on April 15, he did not provide "specifics" about Jeffery's treatment. *Id.* at PageID 955. Contrary to Jeffery's suggestion, Welsh did not "provide[] all obtainable information as of April 15, 2014 that was relevant to the claim." Appellant Br. at 33.

Second, Jeffery claims that because she was still receiving treatment in April 2014, it would have been impossible to report "the nature and extent of [her] injuries" before Clemens's insurance policy expired. Insurance Policy, R.46-15 at PageID 442. We agree that Clemens's insurance

policy cannot be read to require the disclosure of unascertainable information. Instead, the condition precedent to MedPro's obligation is satisfied if the notice of a potential claim "includes all *reasonably obtainable* information." *Id.* (emphasis added). So while Jeffery could not provide the full extent of the damage caused by Clemens's negligent periodontal treatment, she could inform MedPro about her visits to Clemens's office, the nature of the treatment, and the names of possible witnesses. *See First Pros. Ins. Co. v. Sutton*, 607 F. App'x 276, 283 (4th Cir. 2015) (concluding that MedPro's insurance policy only requires the insured to "give the specific types of information listed in the provision if that information is reasonably obtainable"). As described above, she did not do so.

Third, Jeffery notes that MedPro used the term "claim" when describing her case in its internal database and subsequent communications with Welsh. In her view, this is "extrinsic evidence that proves all obtainable information was provided." Appellant Br. at 36. This conclusion relies on two assumptions: (1) by using the term "claim," MedPro acknowledged that Jeffery had a potential claim against Clemens, and (2) if MedPro recognized that Jeffery had a potential claim, then she must have provided all reasonably obtainable information. Even if we grant Jeffery's first assumption, her second assumption runs up against the plain language of the insurance policy. *See Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 687 (Ky. 2012) ("[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." (internal quotation marks omitted)). Clemens's policy defined a "potential claim" as "an incident which the Insured reasonably believes will result in a claim for damages." Insurance Policy, R.46-15 at PageID 443. It also provided that MedPro had no duty to pay damages "on a potential claim unless it was reported to [MedPro] during the term

of this policy *and* the report includes all reasonably obtainable information." *Id.* at PageID 442 (emphasis added). Because the policy distinguishes a "potential claim" from the requirement to disclose "all reasonably obtainable information," it does not follow that the former necessarily contains the latter. Even when viewing the facts in the light most favorable to Jeffery, MedPro's terminology does not prove that Jeffery satisfied the condition precedent.

Fourth, Jeffery argues that we should reach the same conclusion as *Sutton*, a case in which the Fourth Circuit analyzed an identical insurance policy provision and found that MedPro was obligated to provide coverage. 607 F. App'x at 290–91. In *Sutton*, a doctor received a letter from a hospital's risk-management department informing her that a former patient submitted a request for medical records. *Id.* at 278–79. The letter did not include details about the patient's treatment or hospitalization, and the doctor did not recall treating the patient. *Id.* at 279. Immediately after receiving the letter, the doctor called MedPro and relayed the information contained in the letter, but she did not identify the patient or provide any details about the patient's treatment. *Id.* at 279, 286. The Fourth Circuit held that the district court did not clearly err in finding that the doctor provided "all reasonably obtainable information" during the call and thus satisfied the condition precedent to MedPro's coverage. *Id.* at 286–87. Here, Jeffery argues that MedPro must indemnify Clemens because Welsh provided "more evidence" to MedPro than the doctor did in *Sutton*.

Again, the question is not how much information Welsh provided during the April 15 phone calls, but whether he provided "all reasonably obtainable information." In *Sutton*, the Fourth Circuit acknowledged that the doctor provided "limited" information to MedPro and it was a "close question" as to whether she satisfied the condition precedent. *Id.* at 286. But the district court also found that the doctor "relayed all information that was *then known to her* at the time of the call," as the doctor did not remember the name of her patient or the treatment she provided. *Id.* at 279,

286 (emphasis added). By contrast, Welsh was personally aware of several details about Jeffery's treatment, yet he did not disclose "[w]hatever specifics [he] knew" during the phone calls to MedPro. Welsh Dep., R.64 at PageID 955. So while he may have had "no reason" to call MedPro "unless he [wa]s notifying them of a potential claim," Appellant Br. at 40, we cannot "rewrite contracts containing explicit terms." *Ky. State Univ.*, 677 S.W.3d at 306.

Fifth, Jeffery asks this court to consider an affidavit in which Welsh attempted to "clear up confusion and inform the District Court that he told [MedPro] what he knew." Appellant Br. at 47. Welsh's affidavit—dated one month after the court granted summary judgment—contradicted his deposition testimony and stated that during the phone calls, he "told [MedPro] all relevant malpractice information [he] knew as of April 15, 2014." Welsh Affidavit, R.67-3 at PageID 1023. Jeffery attached the affidavit to her motion to alter or amend the judgment. In denying Jeffery's motion, the district court discarded the affidavit because it "could have been submitted prior to summary judgment." Order, R.70 at PageID 1214.

We are in no position to consider Welsh's belated affidavit for the first time on appeal. "In general, an appellate court reviewing a grant of summary judgment cannot consider evidence that was not before the district court at the time of its ruling." *Good v. Ohio Edison Co.*, 149 F.3d 413, 421 n.16 (6th Cir. 1998). This rule applies to affidavits submitted by a party after the court granted summary judgment to the opposing party. *See McKay v. Federspiel*, 823 F.3d 862, 868 (6th Cir. 2016); 16A Charles Alan Wright et al., *Federal Practice and Procedure* § 3956.1, at 724 (5th ed. 2019) ("[O]rdinarily, the court of appeals will not consider matter that was filed with the district court, if at all, *after* the date of the judgment or order that is challenged on appeal."). As the district court recognized, Jeffery could have filed an errata sheet or affidavit supplementing Welsh's deposition testimony before the court granted summary judgment. Instead, Jeffery filed Welsh's

affidavit as an "eleventh-hour salvo attempt[] to . . . present new evidence," and we will not consider it here. Order, R.70 at PageID 1214.[5]

Sixth, Jeffery submits that we should "review" MedPro's prelitigation conduct, which purportedly made it "more difficult for [Jeffery] to prove that notice of a potential claim had occurred." Appellant Br. at 49–50. Specifically, she claims that (1) MedPro only considered whether Jeffery provided notice of a claim—not a potential claim—when it denied coverage in October 2014, and (2) MedPro was "hiding" the insurance policy from Jeffery until it removed this case to federal court. In Jeffery's view, these tactics allowed MedPro to "use[] the passage of time and faded memory to its advantage." *Id.* at 51.

Jeffery provides neither a legal basis nor any caselaw to support her "quasi-spoliation argument." Order, R.70 at PageID 1215. To be sure, the "passage of time can result in spoliation of evidence, especially where, as here, an injury or event occurred several years in the past." *Jones v. Pinter*, 642 S.W.3d 698, 705 (Ky. 2022). But Jeffery has not provided evidence that MedPro engaged in intentional or bad faith tactics to obtain an advantage in future litigation. *Cf. Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 730–31 (Ky. 2020) (describing the standard for a "missing-evidence" jury instruction at trial). Moreover, Jeffery is at least partly responsible for the "passage of time" between the April 2014 phone calls and the present litigation, as she waited more than two years to file her complaint against MedPro after obtaining the default judgment against Clemens.

---

[5] We also note that MedPro's motion for summary judgment referenced several portions of Welsh's deposition transcript that were not attached to the motion. But the district court ordered MedPro to file the entirety of Welsh's deposition into the record, and MedPro complied with the order.

* * *

This case presents an unfortunate set of circumstances. When Jeffery suffered significant pain because of Clemens's negligent periodontal treatment, Clemens abandoned her. When Jeffery attempted to report a potential claim with Clemens's insurer, she didn't know she had to report "all reasonably obtainable information." And when Jeffery ultimately did provide all reasonably obtainable information, Clemens's insurance policy had already expired.

While we are sympathetic to Jeffery's plight, she is asking this court to impose an obligation on Clemens's insurer that neither the insurance policy nor Kentucky law require. Ambiguous insurance contracts must be construed against the insurer, but "this rule of strict construction certainly does not mean that every doubt must be resolved against the insurer and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the plain meaning in the contract." *Tower Ins. Co. of N.Y. v. Horn*, 472 S.W.3d 172, 174 (Ky. 2015). Under the plain meaning of Clemens's policy, Welsh failed to provide "all reasonably obtainable information" that he knew about Jeffery's potential claim. Because he did not provide the required notice to MedPro before Clemens's coverage period expired, MedPro is not obligated to indemnify the default judgment.

**B.**

We now turn to Jeffery's second claim: whether MedPro violated the KUCSPA by engaging with Jeffery in bad faith. *See* Ky. Rev. Stat. § 304.12-230. In her complaint, Jeffery alleged that Med Pro "fail[ed] to promptly provide a reasonable explanation for denying coverage under [Clemens's] insurance" and did not "attempt[] in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability had become reasonably clear." Complaint, R.1-2 at PageID 31. In her appellate briefing, Jeffery further claims that MedPro "continued to

misrepresent its policy" throughout this litigation. Appellant Br. at 52. Because MedPro had no contractual obligation to Clemens, Jeffery is not entitled to relief under the KUCSPA.

"The KUCSPA comprehensively defines misleading insurance investigative practices and prohibits insurers from engaging in certain activities in the course of settling claims." *Hollaway v. Direct Gen. Ins. Co. of Miss., Inc.*, 497 S.W.3d 733, 737 (Ky. 2016). These activities include "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy . . . for denial of a claim" and "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims." Ky. Rev. Stat. § 304.12-230(6), (14). The statute provides a cause of action against the insurer for both the insured and a third-party claimant. *See State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988) (explaining that the KUCSPA creates a bad faith cause of action when "read together" with Kentucky's general cause of action statute, Ky. Rev. Stat. § 446.070). "The gravamen of the KUCSPA . . . is that an insurer is required to deal with the insured or third-party claimant in good faith." *Belt v. Cincinnati Ins. Co.*, 664 S.W.3d 524, 531 (Ky. 2022).

There is "a tall burden of proof on plaintiffs seeking to recover on a theory of bad faith." *Hollaway*, 497 S.W.3d at 737. Specifically, a plaintiff must prove that the insurer (1) was "obligated to pay the insured's claim under the terms of the policy"; (2) lacked "a reasonable basis in law or fact for denying the claim"; and (3) "either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 584 (Ky. 2021) (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). The Kentucky Supreme Court recently explained the difference between the first and second elements: the first element is satisfied by "proof that the insured's policy requires

the insurer to pay," while the second element requires a showing that "the insured's liability is beyond dispute." *Id.* at 585–86.

The district court correctly found that Jeffery failed to establish the first element. As explained above, the condition precedent to MedPro's obligation to indemnify Clemens—sufficient notice of a potential claim during the coverage period—did not occur. Thus, MedPro "had no contractual duty to pay the claims" against Clemens. *Id.* at 586. And "[a]bsent a contractual obligation, there is simply no bad faith cause of action, either at common law or by statute." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000); *see also Est. of Bramble v. Greenwich Ins. Co.*, 671 S.W.3d 347, 353 (Ky. 2023) ("[P]laintiffs must fully shoulder the burden of proving the insurer is obligated to pay in order to prevail in a bad faith claim.").

Jeffery asserts that we should ignore the Kentucky Supreme Court's guidance and turn instead to *Elliott v. Liberty Mut. Fire Ins. Co.*, No. CIV. 09-178, 2010 WL 3294417 (E.D. Ky. Aug. 19, 2010). In *Elliot*, the plaintiff brought claims under the KUCSPA against a hot dog manufacturer, the manufacturer's insurer, and the insurer's claims manager. *Id.* at *1. The court granted motions to dismiss by the manufacturer (because the statute of limitations expired) and the claims manager (because the KUCSPA does not allow claims against individual adjusters). *Id.* But the court found that the claims against the insurer could proceed, as the plaintiff "should not be precluded from arguing that [the insurer] had an obligation to pay [the plaintiff's] claims under the terms of [the insurer's] policy." *Id.* at *3.

*Elliott* does not support Jeffery's argument. The court explicitly recognized the first element of a KUCSPA claim: "the insurer must be obligated to pay the claim under the terms of the policy." *Id.* at *2. In allowing the case to proceed, the court merely acknowledged that the plaintiff could satisfy this element even though the plaintiff's underlying tort claim against the

manufacturer was barred by the statute of limitations. *Id.* at *3. By analogy, Jeffery could theoretically pursue a KUCSPA claim against MedPro even if her negligence claim against Clemens was procedurally barred. But Jeffery would still need to show that MedPro was obligated to indemnify Clemens, and she has not done so. Thus, she does not have a viable claim under the KUCSPA.

## III.

We **AFFIRM** the district court's judgment.